UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **MICHAEL W. LOWE** | **CIVIL ACTION NO. 3:17-CV-448** |
| VS. | SECTION P |
| | JUDGE ROBERT G. JAMES |
| **CHAD LEE, ET AL** | **MAGISTRATE JUDGE HAYES** |

## REPORT AND RECOMMENDATION

Before the court is a civil rights complaint (42 U.S.C. §1983) filed *in forma pauperis* on March 24, 2017, by *pro se* plaintiff Michael W. Lowe. Plaintiff is incarcerated at the Franklin Parish Detention Center (FPDC) in Winnsboro, Louisiana. He sues Chad Lee, Sean Scott, Chris Wallas, Cpt. Malcolm Welch, Danna Lee, Lt. Danny Lively and Lt. Charles Johnson. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court.

### *Statement of the Case*

Plaintiff, a pre-trial detainee, asserts that he was booked into the FPDC on October 22, 2016, and pursuant to orders from Chad Lee, he was placed in the drunk tank and not allowed to have telephone or commissary privileges. [Rec. Doc. 6, p. 2]

On November 6, 2016, he was moved by Lt. Danny Lively to cell 178 with a D.O.C. inmate. He was written up by Captain Malcolm Welch on December 2, 2016 for fighting and moved to a holding cell 304. He wrote to Chad Lee and Nurse Donna Lee and requested to be moved out of the cell with the "crazy inmate because he takes medication." *Id.* at p. 3. He remains in cell 304 and has not been in general population since being booked into FPDC. He asserts that he is being deliberately placed in cells with DOC inmates to cause him harm.

Plaintiff also complains that he is not allowed to use the telephone, have visitors or visit the commissary, as these privileges are not allowed to inmates in holding cells. He alleges that the shower in his cell is "so nasty with mold and mildew," and never cleaned by inmates." *Id.* The cell has only been cleaned twice since December 2, 2016, and urine leaks from the toilet. Moreover, at all times there are 3-4 inmates living in this 2 man cell, some inmates sleeping on the floor.

Plaintiff further alleges that he is not allowed to go to the law library while in a holding cell. He states that he could not pursue a legal claim because he has no knowledge of the law or how to write a complaint to state a claim. He also asserts that he has no access to indigent stamps, writing instruments or paper to needed to file a claim.

Finally, in his Original Complaint, plaintiff alleged that Sean K. Scott, the booking officer at the facility, took his property, including his pants, belt, money and food stamp card. Plaintiff stated his intent to dismiss this claim in his Amended Complaint. [Rec. Doc. 6, p. 2]

*Law and Analysis*

*1. Initial Review*

When a prisoner sues an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983, the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A; 28 U.S.C.1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).

A claim is frivolous if it lacks an arguable basis in law or in fact. *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir.1993); see, *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992). A civil rights complaint fails to state a claim upon which relief can be granted if it

appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986). District courts must construe *in forma pauperis* complaints liberally, but they are given broad discretion in determining when such complaints are frivolous. *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). Nevertheless, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

### 2. *Right to Use Telephone Claim, Have Visitors, Access Commissary*

Plaintiff alleges that his constitutional rights have been violated as a result of restrictions put on his telephone use, visitors and commissary while at FPDC. In *Sandin v. Connor*, 515 U.S. 472, 481-83, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995), the United States Supreme Court held that analysis of a prisoner's due process claim relating to denial of prison privileges begins with determining whether a constitutionally protected liberty interest exists. *Id.* "Liberty interests

protected by the Fourteenth Amendment may arise from two sources—the Due Process Clause itself and the laws of the States." *Id.* (citing *Hewitt v. Helms*, 459 U.S. 460, 466, 103 S. Ct. 864, 74 L. Ed. 2d 675 (1983). In *Sandin*, the Supreme Court recognized that, although the States may create liberty interests, "these interests will generally be limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at *10 *(citing Sandin*, 515 U.S. at 484 (citations omitted). Thus, in *Sandin*, when a prisoner was placed in disciplinary segregation for 30 days and the placement did not inevitably affect the duration of his sentence, the Supreme Court held that due process does not require that a prisoner be afforded the procedural mechanisms previously prescribed in *Wolff v. McDonnell*, 418 U.S. 539, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974), and *Hewitt*, 459 U.S. at 460. *Id.*

"[T]he Due Process Clause does not protect every change in conditions of confinement which has a substantial adverse effect upon a prisoner*." Id. (citing Madison v. Parker*, 104 F.3d 765, 767 (5th Cir. 1997)). "Prisoners held in lawful confinement have their liberty curtailed by definition, so the procedural protections to which they are entitled are more limited than in cases where the right at stake is the right to be free from confinement at all." *Id.* (citing *Wilkinson v. Austin*, 545 U.S. 209, 225, 125 S. Ct. 2384, 162 L. Ed. 2d 174 (2005) (citations omitted)).

The Fifth Circuit in *Madison, supra,* held that a prisoner's 30-day commissary and cell restrictions imposed as punishment for disciplinary violations were "merely changes in the conditions of his confinement and do not implicate due process concerns." *Id.* (citing *Madison*, 104 F.3d at 768; accord *Hernandez v. Velasquez*, 522 F.3d 556, 563 (5th Cir. 2008); *Dixon v. Hastings*, 117 Fed. Appx. 371, 2005 WL 17382, at *1 (5th Cir. 2005); *Malchi v. Thaler*, 211 F.3d 953, 957-58 (5th Cir. 2000)). In Hernandez, the Fifth Circuit held that plaintiff did not show that his lock down

4

posed an atypical or significant hardship when he was confined to a shared cell for twelve months with permission only to leave for showers, medical appointments and family visits. *Hernandez*, 522 F.3d at 563. In *Hernandez* and *Madison*, the Fifth Circuit held that such restrictions do not represent the type of atypical, significant deprivation in which a state might create a liberty interest. *Id.* at *11 (*citing Hernandez*, 522 F.3d at 563; *Madison*, 104 F.3d at 768.) Examples of prison hardships that would qualify as so atypical and significant as to implicate due process considerations include unwanted administration of anti-psychotic drugs, involuntary commitment to a mental hospital or extension of the prisoner's sentence for his underlying criminal conviction. *Id.* (citing *Sandin*, 515 U.S. at 484.

It is well settled law that prison officials have broad discretion to administer conditions of confinement, and the federal courts will not interfere with legitimate prison administration in the absence of a constitutional violation. *Bell v. Wolfish*, 441 U.S. 520, 547-48, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979); *Smith v. Bingham*, 914 F.2d 740, 742 (5th Cir. 1990). Prisoners have "'no right to unlimited telephone use.' Instead, a prisoner's right to telephone access is 'subject to rational limitations in the face of legitimate security interests of the penal institution.'" *Waganfeald v. Gusman*, 674 F.3d 475 (5th Cir. 2012) (quoting *Douglas v. Gusman*, 567 F.Supp.2d 877, 886 (E.D. La. 2008)); *Washington v. Reno*, 35 F.3d 1093, 1100 (6th Cir. 1994); *Benzel v. Grammer*, 869 F.2d 1105, 1108 (8th Cir. 1982); *Strandberg v. City of Helena,* 791 F.2d 744, 747 (9th Cir. 1986)). "Prisons legitimately impose a variety of restrictions on inmates' use of telephones." *Roy v. Stanley*, No. 02-CV-555-JD, 2005 U.S. Dist. LEXIS 20644, 2005 WL 2290276, at *7 (D.N.H. Sept. 20, 2005) (citing *United States v. Lewis*, 406 F.3d 11, 13 (1st Cir. 2005); *Gilday v. Dubois*, 124 F.3d 277, 293 (1st Cir. 1997); *Spurlock v. Simmons*, 88 F. Supp. 2d 1189, 1193 (D. Kan. 2000)).

Moreover, there is no constitutional right for inmate to be able to purchase items from a commissary. *Patin v. LeBlanc*, 2012 U.S. Dist. LEXIS 106300, 2012 WL 3109402 (*citing Tokar v. Armontrout*, 97 F.3d 1078, 1083 (8th Cir. 1996) ("[W]e know of no constitutional right of access to a prison gift or snack shop."); *Harrison v. Federal Bureau of Prisons*, 611 F. Supp.2d 54, 62 (D.D.C. 2009) ("It is established that an inmate has no federal constitutional right to purchase items from a prison commissary."); *Hopkins v. Keefe Commissary Network Sales*, No. 07-745, 2007 U.S. Dist. LEXIS 99140, 2007 WL 2080480, at *5 (W.D. Pa. Jul. 12, 2007).

Finally, it is well settled that "visitation privileges are a matter subject to the discretion of prison officials." *Berry v. Brady*, 192 F.3d 504, 508 (5th Cir. 1999) (*quoting McCray v. Sullivan*, 509 F.2d 1332, 1334 (5th Cir.), *cert. denied*, 423 U.S. 859, 96 S. Ct. 114, 46 L. Ed. 2d 86 (1975)). An inmate has no constitutional right to contact visitation privileges. *See Sandin v. Conner*, 515 U.S. 472, 484, 115 S. Ct. 2293, 2300, 132 L. Ed. 2d 418 (1995) (holding that a prisoner's liberty interest is "generally limited to freedom from restraint which … imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."); *Bell v. Wolfish,* 441 U.S. 520, 547, 99 S. Ct. 1861, 1878, 60 L. Ed. 2d 447 (1979) (stating that prison officials should be accorded the widest possible deference in the application of polices and practices designed to maintain security and preserve internal order); *Berry*, 192 F.3d at 508 (*citing McCray*, 509 F.2d at 1334).

Lowe concedes that the reason for being moved from cell 178 to holding cell 304 in December 2016 was because he was written up for fighting. [Rec. Doc. 6, p. 3] His complaint establishes that, due to his placement in a holding cell, rather than a general population dorm, his visitation, telephone and commissary privileges were restricted. "These actions do not constitute

6

such an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life' that particular form of due process of the type described in *Wolff* were required." *Id.* at *11-12 (citing *Sandin*, 515 U.S. at 484; *Madison*, 104 F.3d at 768; see *Johnson v. Livingston*, 360 F. App'x 531, 532 (5th Cir. 2010) (citing *Malchi v. Thaler*, 211 F.3d 953, 958 (5th Cir. 2000)) ("Loss of privileges and cell restriction do not implicate due process concerns."); *Dixon*, 117 F. App'x at 372 ("loss of commissary privileges, cell restriction, placement in administrative segregation, and extended work schedule were not atypical punishments requiring due process protections"); *Payne v. Dretke*, 80 F. App'x 314, 314 (5th Cir. 2003) ("commissary and recreation restrictions [as disciplinary punishment] . . . do not implicate a liberty interest under the Due Process Clause"). As no claim of violation of due process rights cognizable under Section 1983 can be stated under the circumstances described by plaintiff, his claim should be dismissed.

### 3. Condition of Cell

On December 2, 2016, plaintiff was moved to cell 304, which he asserts is "so nasty it's cruel and unusual punishment." [Rec. Doc. 1, p.6] The cell has only been cleaned twice since December 2, 2016, and urine leaks from the toilet. Moreover, at all times there are 3-4 inmates living in this 2 man cell, with inmates sleeping on the floor.

"The Fourteenth Amendment prohibits the imposition of conditions of confinement on pretrial detainees that constitute punishment." *Collins v. Ainsworth*, 382 F.3d 529, 540 (5th Cir. 2004). Nevertheless, the jurisprudence recognizes that the judiciary is ill equipped to micro-manage a jail's day-to-day operations, and federal courts are therefore loath to intervene when detainees complain of trivial inconveniences. *Tate v. Gusman*, 2015 U.S. Dist. LEXIS 146809, *5 (E.D. La. 2015). Further, such judicial restraint is appropriate because the federal constitution simply is not

concerned with a *de minimis* level of imposition on pretrial detainees. *Id.* at *6 (citing *Bell v. Wolfish*, 441 U.S. 520, 539 n.21, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979); *Ruiz v. El Paso Processing Center*, 299 Fed. App'x 369, 371 (5th Cir. 2008); *Maddox v. Gusman*, Civ. Action No. 14-2435, 2015 U.S. Dist. LEXIS 34318, 2015 WL 1274081, at *3 (E.D. La. Mar. 19, 2015). For the following reasons, it is apparent that the physical conditions at the jail alleged by plaintiff, while unpleasant, concern nothing more than *de minimis* inconveniences which do not constitute "punishment" or otherwise rise to the level of constitutional violations.

Although prisons should be reasonably clean, "[t]he Constitution does not require that prisons be completely sanitized or as clean or free from potential hazards as one's home might be." *Id*. (quoting *McAllister v. Strain*, Civ. Action No. 09-2823, 2009 U.S. Dist. LEXIS 120101, 2009 WL 5178316, at *3 (E.D. La. Dec. 23, 2009); accord *Talib v. Gilley*, 138 F.3d 211, 215 (5th Cir. 1998) ("[T]he Constitution does not mandate prisons with comfortable surroundings or commodious conditions.").

Serving time in prison "is not a guarantee that one will be safe from life's occasional inconveniences." *Holloway v. Gunnell*, 685 F.2d 150, 156 (5th Cir. 1982). Courts have repeatedly held "that the Constitution does not mandate prisons with comfortable surroundings or commodious conditions." *Talib v. Gilley*, 138 F.3d 211, 215 (5th Cir. 1998) (citing *Rhodes v. Chapman*, 452 U.S. 337, 349, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981)); accord *Hernandez v. Velasquez*. 522 F.3d 556, 560 (5th Cir. 2008).

"[J]ails must provide only reasonably adequate hygiene and sanitation conditions." *Burton v. Cameron County*, 884 F. Supp. 234, 241 (S.D. Tex. 1995) (citing *Green v. Ferrell*, 801 F.2d 765, 771 (5th Cir. 1986)); accord *Benshoof v. Layton*, 351 Fed. Appx. 274, 2009 WL 3438004, at *4

(10th Cir. 2009); *Gates v. Cook*, 376 F.3d 323, 342 (5th Cir. 2004). None of plaintiff's allegations about the conditions at the jail establish constitutional violations. *See Davis v. Scott*, 157 F.3d 1003, 1006 (5th Cir. 1998)(no constitutional injury when plaintiff was confined in "filthy" cell for three days) (citing *Smith v. Copeland*, 87 F.3d 265, 269 (8th Cir. 1996) (no constitutional violation when prisoner was exposed for four days to raw sewage from overflowed toilet in his cell)); *Davis v. St. Charles Parish Corr. Ctr.*, No. 10-98, 2010 U.S. Dist. LEXIS 20651, 2010 WL 890980, at *9 (E.D. La. Mar. 8, 2010) (citing *Talib*, 138 F.3d at 215); *Wilson v. Lynaugh*, 878 F.2d 846, 849 & n.5 (5th Cir. 1989)) (Inmate who complained of "unsanitary practice[s]," including inadequate ventilation, unsanitary water fountains, inmates using one ice cooler, rest room four feet from the dining area, toilets leaking water and unsanitized living quarters, failed to state a claim. "Simply because [plaintiff's] dorm is less sanitary than he would like does not render the conditions unconstitutional.").

Furthermore, the jurisprudence has repeatedly held that the presence of mold and dampness in a prison setting does not render an inmate's confinement unconstitutional. *Green, supra* (citing *Eaton v. Magee,* No. 10-112, 2012 WL 2459398, at *5 (S.D. Miss. Jun. 27, 2012) ("Plaintiff's claim that the bathroom and shower area are unsanitary and contain black mold fails to rise to the level of a constitutional violation."); *Barnett v. Shaw,* No. 11-0399, 2011 WL 2200610, at *2 (N.D. Tex. May 18, 2011) (allegation of "excessive amount of black mold in the showers and sinks" was insufficient to raise a claim for constitutional violation), *adopted,* 2011 WL 2214383, at *1 (N.D. Tex. Jun. 7, 2011); *Reynolds v. Newcomer,* No. 09-1077, 2010 WL 234896, at *10 (W.D. La. Jan. 19, 2010) (complaints of "the presence of black mold in living areas, eating areas, and shower areas" were found to "rise to no more than a *de minimis* level of imposition with which the Constitution is

9

not concerned" (quotation marks omitted))). Thus, Lowe's allegations about mold fail to establish constitutional violations.

Moreover, Lowes' complaints that the cell smells like urine fails to establish a constitutional violation. *See Smith v. Copeland,* 87 F.3d 265, 269 (8th Cir. 1996) (no constitutional violation when prisoner was exposed for four days to raw sewage from overflowed toilet in his cell); *Davis v. St. Charles Parish Corr. Ctr.,* No. 10-98, 2010 WL 890980, at *9 (E.D. La. Mar. 8, 2010) (citing *Talib,* 138 F.3d at 215). "Simply because [plaintiff's] dorm is less sanitary than he would like does not render the conditions unconstitutional." *Wilson v. Lynaugh,* 878 F.2d 846, 849 & n.5 (5th Cir. 1989)) (inmate who complained of "unsanitary practice[s]," including inadequate ventilation, unsanitary water fountains, 52 inmates using one ice cooler, rest room four feet from the dining area, toilets leaking water and unsanitized living quarters, failed to state a claim.).

Finally, while he does not allege that HE has been forced to sleep on the floor, only that one inmate in his cell must to do so, that claim does not implicate the constitution. The United States Constitution does not require that prisoners be provided an elevated bed. *Mann v. Smith*, 796 F.2d 79, 85 (5th Cir.1986)(rejecting pretrial detainee's claim that forcing him to sleep on the floor was unconstitutional); *Castillo*, 687 F.Supp. at 281; *Starks v. Bowles*, 682 F.Supp. 891 (N.D.Tex. 1988), affd, 851 F.2d 1419 (5th Cir. 1988); *Williams v. Gusman*, No. 15-96, 2015 WL 5970424 (E.D. La., 2016). Thus, to the extent that plaintiff alleges he was forced to sleep on the jail floor, this does not give rise to a violation of his constitutional rights and is not cognizable under §1983.

### *4. Housing Detainees with DOC Inmates*

Lowe alleges that, as a pretrial detainee, he was improperly housed with convicted inmates,

although no actual injury or physical harm resulted from his housing assignment. The classification of inmates is a prison administrative function. *Jones v. Diamond*, 636 F.2d 1364, 1376 (5th Cir. 1981). Courts accord great deference to prison officials' administrative decisions and will not interfere with legitimate administration without a constitutional violation. *Bell v. Wolfish*, 441 U.S. 520, 547-48, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979), *Smith v. Bingham,* 914 F.2d 740, 742 (5th Cir. 1990). "Inmates have a federal right to due process at prison classification . . . only if state law contains 'substantive predicates' limiting the prison administrators' discretion to classify, assign, and punish inmates." *Ricker v. Leapley*, 25 F.3d 1406, 1409 (8th Cir. 1994); *accord Woods v. Edwards*, 51 F.3d 577, 582 (5th Cir. 1995) (*citing Hewitt v. Helms*, 459 U.S. 460, 469-70, 103 S. Ct. 864, 74 L. Ed. 2d 675 (1983)); *Canterino v. Wilson*, 869 F.2d 948, 953 (6th Cir. 1989) (*citing Hewitt,* 459 U.S. at 472). "Classification of inmates in Louisiana is a duty of the [jailer] and an inmate has no right to a particular classification under state law." *Woods*, 51 F.3d at 581-82 (quotation omitted).

Thus, "[i]nmates have no protectable property or liberty interest in custodial classification. The classification of prisoners is a matter within the discretion of prison officials. Absent an abuse of discretion, federal courts are loathe to interfere with custodial classifications established by prison officials." *Whitley v. Hunt*, 158 F.3d 882, 889 (5th Cir. 1998) (citations omitted), abrogated on other grounds by *Booth v. Churner*, 532 U.S. 731, 735, 121 S. Ct. 1819, 149 L. Ed. 2d 958 (2001); accord *Jones v. Roach*, 196 Fed. Appx. 287, 2006 WL 2474746, at *1 (5th Cir. 2006); *Wilkerson v. Stalder*, 329 F.3d 431, 436 (5th Cir. 2003).

Here, Lowe gives us no indication that him being housed with convicted inmates subjected him to injury or any risk of harm. He offers no facts to substantiate his conclusory allegation that he was purposefully housed with DOC inmates to cause him harm. More importantly, he has not

alleged any injury or harm. As such, he has failed to allege a constitutional violation arising out of the circumstances of his housing.

### 5. Access to the Courts

Prisoners clearly have a constitutional right to access the courts. *Bounds v. Smith*, 430 U.S. 817, 821, 97 S. Ct. 1491, 52 L. Ed. 2d 72 (1977). However, prisoners do not have a right to a law library per se; rather, "prison law libraries and legal assistance programs are not ends in themselves, but only the means for assuring a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Lewis v. Casey*, 518 U.S. 343, 351, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996). Furthermore, a prisoner must "demonstrate an actual injury stemming from defendants' unconstitutional conduct." *Id.* at 354.(citing *Bounds v. Smith*, 430 U.S. 817, 97 S. Ct. 1491, 52 L. Ed. 2d 72 (1977); see also *Ruiz v. United States*, 160 F.3d 273, 275 (5th Cir. 1998). To establish an "actual injury," the prisoner must show that the denial of access "hindered his efforts to pursue a legal claim." *Id.* at 351; see also *Chandler v. Baird*, 926 F.2d 1057, 1063 (5th Cir. 1991) (holding that a civil rights claim cannot be based on "minor and short-lived impediments to access" in the absence of actual prejudice); *Henthorn v. Swinson*, 955 F.2d 351, 354 (5th Cir. 1992) (holding that if a litigant's position is not prejudiced by the claimed violation, his claim of denial of access to the courts is not cognizable).

Lowe has not alleged that the actions of any defendant hindered his efforts to pursue a legal claim. He has not named one defendant who violated his constitutional rights with respect to this claim, despite being ordered to do so. Moreover, other than a vague allegation of being "hindered from accessing the law," he has not alleged how any defendant interfered with his opportunity to present claims to the courts, nor has he alleged any specific injury. He was able to file the instant

complaint, which only required that he allege some facts to support the conclusion that his constitutional rights were violated by the defendant. *See* Fed. R. Civ. P. 8. He was also able to timely file his Amended Complaint, as ordered by this Court.

Plaintiff makes allegations of being denied indigent stamps and being denied access to the courts because he cannot buy postage stamps, paper, envelopes and pens. Prisoners have a general First Amendment right to send mail. *Wells v. Thaler*, 460 Fed. Appx. 303, 310 (5th Cir. 2012) (*citing Thornburgh v. Abbott*, 490 U.S. 401, 109 S. Ct. 1874, 104 L. Ed. 2d 459 (1989)). Moreover, prisons must provide stamps, at state expense, to indigent inmates for mailing legal documents. *Bounds v. Smith*, 430 U.S. 817, 824-25, 97 S. Ct. 1491, 52 L. Ed. 2d 72 (1977); *Mayfield v. Wilkinson*, 117 Fed. Appx. 939, 940 (5th Cir. 2004). However, indigent inmates have no constitutional right to free postage for non-legal mail. *Hogan v. Peterson*, 2013 U.S. Dist. LEXIS 102553, 2013 WL 3833043 (W.D. Tex. July 23, 2013); *Van Poyck v. Singletary*, 106 F.3d 1558, 1559 (11th Cir. 1997); *Hershberger v. Scaletta*, 33 F.3d 955, 957 (8th Cir. 1994); see also *Argue v. Hofmeyer*, 80 Fed. Appx. 427, 429 (6th Cir. 2003); *Lee v. Perry*, 993 F.2d 1543, 1993 WL 185752 (5th Cir. 1993). While plaintiff alleges the was denied postage, envelopes, paper and pens, it is clear that he, in fact, did have access to writing materials, as well as stamps, needed to compose and mail both his original and amended complaint. As such, his claims that he is being denied access to the court because he is being denied paper, pen, envelopes and postage stamps, must fail.

### 6. *Stolen Food Stamp Card*

In his Original Complaint, plaintiff alleged that Sean K. Scott, the booking officer at the facility, took his property, including his pants, belt, money and food stamp card. Plaintiff stated his intent to <u>dismiss</u> this claim in his Amended Complaint. [Rec. Doc. 6, p. 2] Accordingly, this claim

13

should be dismissed.

*Conclusion*

**IT IS RECOMMENDED** that plaintiff's Civil Rights Complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted in accordance with the provisions of 28 U.S.C. §1915(i) and (ii).

**Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See, Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

In Chambers at Monroe, Louisiana, October 23, 2017.

                                                **KAREN L. HAYES**
                                     **UNITED STATES MAGISTRATE JUDGE**